HACK v. DADY.

(Supreme Court, Appellate Division, Second Department. January 27, 1911.)

Appeal from Kings County Court.

Action by Henry Hack against Michael J. Dady. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

See, also, 136 App. Div. 888, 119 N. Y. Supp. 1127.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Frank V. Johnson and William F. Kiefer, for appellant.
Frederick N. Van Zandt, for respondent.

PER CURIAM. Judgment and order of the County Court of Kings County unanimously affirmed, with costs, on the authority of Julia Hack v. Dady (decided herewith) 127 N. Y. Supp. 22.

---

(142 App. Div. 533.)

In re LOW et al.

(Supreme Court, Appellate Division, Second Department. January 27, 1911.)

1. EMINENT DOMAIN (§ 228*)— COMMISSIONERS OF APPRAISAL — GROUND FOR REMOVAL.

A commissioner of appraisal in proceedings by the city of New York to acquire property will not be removed because of irritability of temper, due in part to the provoking conduct of the assistant to the corporation counsel; it not appearing that he may not resume self-control and dispassionately review the evidence and determine the questions presented.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 228.*]

2. EMINENT DOMAIN (§ 228*)—COMMISSIONER OF APPRAISAL—GROUND FOR REMOVAL.

That the commissioner left the country for a short trip because of an important business engagement, and was absent for four weeks at the time counsel for the city hoped to close the testimony and submit the issue for final decision, and thereby postponing the matter, was not ground for removal.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 228.*]

3. EMINENT DOMAIN (§ 227*)— COMMISSIONERS OF APPRAISAL — GROUND FOR REMOVAL.

A commissioner of appraisal in proceedings by the city of New York to acquire property by eminent domain acts in a judicial capacity, and he must not only be free from partiality or bias which will affect his judgment, but he must appear above suspicion in respect thereto.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 227.*]

4. EMINENT DOMAIN (§ 228*)—COMMISSIONERS OF APPRAISAL—GROUND FOR REMOVAL.

A commissioner of appraisal in proceedings by the city of New York to acquire property by eminent domain will not be removed for unfitness because the firm of which he is a member appeared as attorneys for property owners in other proceedings by the city, and because he appeared as attorney for a corporation and its tenant in a suit by the city to restrain the corporation from using a building in alleged violation of the Building Code of the city, where the application for removal has been delayed until the other proceedings have terminated.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 228.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

Application of Seth Low and others, constituting the Board of Rapid Transit Railroad Commissioners of the City of New York, to acquire a perpetual underground right, easement, and right of way under Joralemon street. From an order of the Special Term (124 N. Y. Supp. 1050) denying the application of the city of New York for the removal of T. Ellett Hodgskin from the office of Commissioner of Appraisal, the city appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and CARR, JJ.

Clarence L. Barber, for appellant.

George W. Wingate, for respondent.

BURR, J. This proceeding was instituted in 1903 to acquire, by condemnation, "a perpetual underground right, easement, and right of way" under Joralemon and other streets in the borough of Brooklyn for rapid transit purposes. On August 8, 1905, the respondent, T. Ellett Hodgskin, was appointed one of the Commissioners of Appraisal in place and stead of one of the commissioners originally appointed, who had died. Between that date and June, 1910, a large amount of testimony was taken relating to the title of the owners of the various pieces of property affected by this improvement, and in two or three cases, apparently selected as test cases, substantially complete testimony respecting the damages suffered was also taken. This testimony is included in six volumes, containing together more than 14,000 pages. In the month of June an application was made in behalf of the city to remove the respondent from the office of commissioner upon the ground that he was an unfit person to serve in that capacity. From an order denying such application, this appeal is taken.

The grounds of attack may be classified under three heads: First, a rancorous condition of mind which affects the said commissioner to such an extent that he has ceased to occupy an impartial position between the litigants; second, neglect of his duties as such commissioner; and, third, the fact that at various times during his term of office as such commissioner he has appeared as counsel for various clients in other proceedings against the city of a somewhat similar character.

For the first 4½ years of his term of service, and down to the spring of 1910, when a newly appointed assistant to the corporation counsel assumed charge of these proceedings, no criticism seems to have been warranted or made upon the first ground stated. Since that date the record discloses that on several occasions there have been unfortunate clashings between the said assistant and the commissioner, and in connection therewith some expressions of anger. Infirmity of temper in a judicial officer is deeply to be regretted. Reasonable allowance, however, should be made for human weakness, for the great mental and nervous strain resulting from the discharge of the duties of such an office, and particularly is this the case where it is manifest that outbreaks of temper are due in part to provoking or insulting conduct and remarks on the part of counsel. Unless such irritability is indulged in

to such an extent as to indicate an inability, after the outbreak is over, to resume self-control, and calmly and dispassionately review the evidence and determine the questions presented, a judicial officer should not on that account alone be removed. Without reviewing at length the evidence here presented, we think that it utterly fails to indicate any such mental bias. We think, too, that the evidence not only fails to show any neglect of his official duty on the part of the commissioner, but, on the contrary, more than usual assiduity in the performance thereof.

It would seem that the immediate and proximate cause of this proceeding on the part of the counsel for the city is that in May, 1910, just at a time when he hoped and expected to be able to close the taking of testimony in one or more of the test cases above referred to, and submit the same to the commission for its final decision, the commissioner in question was obliged to and did leave the country for a short trip to Europe. He was absent just four weeks. It appears without dispute that such absence was due to an imperative business engagement, and that immediately upon his return he was ready and willing to resume the discharge of his duties. We can appreciate the disappointment that the corporation counsel may have experienced if thereby he was prevented from making a record for promptness and dispatch in bringing to a close a proceeding which, under the control of his predecessors in office, had extended over nearly seven years. But this disappointment should not have caused him to forget either the previous years of faithful service or the exigencies of the occasion.

The third and last ground of attack presents other features. It appears that between December, 1904, and February, 1910, there was a proceeding pending which had been instituted by the city of New York to acquire title to land in the borough of Brooklyn, to be used as an approach to the Manhattan Bridge; that between August, 1905, and May, 1906, a proceeding was pending to acquire land for widening Livingston street in the same borough; and that between September, 1908, and May, 1910, a proceeding was pending to acquire land in Cleveland Place and Broome street, in the borough of Manhattan. In each of these proceedings the law firm of which said commissioner is a member appeared as attorneys for various property owners whose rights were affected thereby, and in many instances, both before and after his appointment, said commissioner personally appeared therein as counsel. It also appears that in 1908 an action was brought by the city of New York against a corporation known as the Realty Associates to restrain it from using a building for school purposes in alleged violation of the Building Code of said city. In the latter case the said commissioner appeared as counsel for said corporation before the referee at the Special Term of the Supreme Court, and in this Appellate Division thereof. The Realty Associates is one of the claimants for large damages in this proceeding by reason of its ownership of several pieces of property affected thereby. But it appears without dispute that, although said corporation was a nominal defendant in said action, the real defense was made by the tenant to whom said building was leased, that the commissioner's firm was retained and

paid by such tenant, that the relation of attorney and client never really existed in this or any other action or proceeding between said corporation and the commissioner or his firm, and does not now exist, and that this is the only matter in which they have even nominally appeared in its behalf. A commissioner of appraisal acts in a judicial capacity. A judicial officer must not only be free from partiality or bias which would affect his judgment, but he must appear above suspicion in respect thereto. It is of the highest importance that cases should be judged fairly. It is of almost equal importance that the reasonable litigant should feel that he has had a fair trial. The confidence of the public in the judicial branch of the government cannot be too jealously guarded. It may be that a commissioner in condemnation proceedings instituted by a municipal corporation, who, while thus acting, was conducting as counsel other warmly contested litigations against the same corporation, could so divorce the two relations that one should not affect the other. It may be that with the wounds of an unfinished battle still smarting he could step from the arena, and, donning the judicial robe, forget the heat and dust and blood hidden under it. But it would take a strong man to do it. Because the risk is one which the ordinary man could not safely assume, the public have a right to demand that even the strong man should not be exposed to it. But, when the strife is over, a different question arises. If the fact that while at the bar one has served the city in litigations against the private citizen is a disqualification for subsequent judicial preferment, although the office of corporation counsel is one of great honor and distinction, a portion of its attractive features might be deemed by some to be wanting. Is one less qualified to sit in judgment between the city and the citizen because he has on previous occasions advocated the claim of the latter against the former? It affirmatively appears that the action above referred to and most of the special proceedings have terminated. It does not appear that any of them are still pending. If, as soon as the commissioner had appeared in any of these various proceedings against the city, application had been made to compel him to make his choice between the positions of judge and advocate, strong grounds would have existed in support thereof, but a delay in such application until the various proceedings in which he appeared as counsel have terminated and the greatest source of danger resulting therefrom has ceased leads us to look upon the situation as not substantially different from that which would have arisen had his employment as advocate ceased before his appointment as commissioner.

The order appealed from should be affirmed, with $10 costs and disbursements.

THOMAS and RICH, JJ., concur. CARR, J., concurs in result. JENKS, P. J., taking no part.